UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-22870-Civ-MOORE
MAGISTRATE P. A. WHITE

COREY O'NEAL,                          :

          Plaintiff,                   :

v.                                     :          REPORT OF
                                                MAGISTRATE JUDGE
ARTHUR BROWN,                          :

          Defendant.                   :

_____

## I.   INTRODUCTION

     Corey O'Neal, a state prisoner, filed an amended complaint in
this *pro se* civil rights action pursuant to 42 U.S.C. §1983, alleg-
ing he was denied proper medical care at the Miami-Dade County
Pretrial Detention Center ("Dade County Jail" or "DCJ") where he
was confined in 2003-2004. Arthur Brown, RN, whose job title at the
time of the alleged events was Director of Patient Care (or
Director of Nursing), is the sole defendant left in the case. The
action is pending against him only in his individual capacity. All
other defendants and claims, including official capacity claims
against Brown, were previously dismissed (DE#s 8, 9, 29, 34).

     **This Cause is before the Court upon Brown's Motion for Summary
Judgment (DE# 51),** with supporting Exhibits (Exs. 1-6, at DE#s 51-2
to 51-7), as to which the plaintiff O'Neal was advised of his right
to respond.[1] O'Neal filed a Response (DE# 58) with one exhibit (an

_____

     [1]     Rule 56© of the Federal Rules of Civil Procedure provides that
summary judgment is proper

          [i]f the pleadings, depositions, answers to interroga-
          tories, and admissions on file, together with the
          affidavits, if any, show that there is no genuine issue
          as to any material fact, and that the moving party is
          entitled to judgment as a matter of law.

     In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that
summary judgment should be entered only against

          a party who fails to make a showing sufficient to
          establish the existence of an element essential to that
          party's case, and on which that party will bear the
          burden of proof at trial.  In such a situation, there
          can be 'no genuine issue as to any material fact,' since

unsigned General Affidavit by inmate Jack Jean, at DE# 58, p.17); and the defendant Brown filed a Reply (DE# 61).

Defendant Brown asserts that the complaint against him is subject to summary disposition in his favor on various grounds, including that plaintiff O'Neal did not fully exhaust his available administrative remedies before filing suit in federal court, as

---

a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted)

Thus, in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted). Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11 Cir. 1990). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11 Cir. 1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11 Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing Anderson v. Liberty Lobby, Inc., supra).

Pursuant to Brown v. Shinbaum, 828 F.2d 707 (11 Cir.1987), an Order of Instructions (DE# 52) was entered, informing plaintiff O'Neal as a pro se litigant, of his right to respond to the defendant's motion for summary judgment. The Order (DE# 52) specifically instructed O'Neal regarding the requirements under Fed.R.Civ.P. 56 for a proper response to such a motion.

required under 42 U.S.C. §1997e(a), which embodies the administra-
tive exhaustion requirement of the Prison Litigation Reform Act of
1995 ("PLRA"); and alternatively that he is entitled to qualified
immunity, that there is no causal connection between him and the
alleged deprivation(s), and the claim fails because the complaint
is in essence based on a theory of negligence or medical mal-
practice which does not rise to the level of a constitutional tort.

### Plaintiff's Allegations

In the body of his amended pleading Plaintiff O'Neal contends
that when he was transferred to the DCJ in June 2003 he was not
given a Tuberculosis ("TB") test. He began feeling neck pain in
January 2004, and complained to a duty nurse. In March he was taken
to see a doctor, because the pain had spread down his back, causing
him to loose strength and experience constipation. Although O'Neal
disagreed with his conclusions, the doctor diagnosed O'Neal as
having back spasms, prescribed Tylenol and muscle relaxers, and re-
fused to perform any tests or physical examination. O'Neal contin-
ued to complain, including filing a grievance on an unspecified
date, which he states was ignored. He was given more muscle relax-
ers, which worsened his condition. In June 2004 he was taken to
Jackson Memorial Hospital ("JMH") for neck and back x-rays; and was
scheduled to return to JMH for more x-rays on June 15, but was not
taken on that date because the Transportation Officer did not have
access to a wheelchair. The next day O'Neal declared a medical
emergency, and the doctor said there was nothing she could do for
him. When he begged her to send him to the hospital, she called JMH
and sent him for the x-rays which had been scheduled to be taken on
June 15. According to O'Neal, the x-rays revealed that he needed
surgery to place a rod in his back. He was sent to the DCJ medical
unit, where he remained until August 4, 2004, when he was transfer-
red to DOC custody. O'Neal contends that between June 16 and August
4, 2004, he was provided no medical treatment, despite the fact
that staff knew about his serious need for surgery, which he con-
tends arose due to delayed treatment. O'Neal alleges that after
being transferred to Florida DOC custody he was diagnosed as having
Tuberculosis in his spinal cord. He contends that Arthur Brown,

3

whom he identifies as Director of the Medical Staff at DCJ, "knew or should have know of these infraction in the proper exercises of their official duties;" and that his illness was obvious, having become so bad that he had to be carried from his jail cell on a stretcher. O'Neal alleged that "the defendants" observed him losing strength in his back and legs, yet failed to administer treatment even after it was brought to their attention that he needed an operation to surgically implant a metal rod in his back. On August 4, nearly two months after the taking of x-rays at JMH in Mid-June 2004, he was transferred to the Florida DOC; and O'Neal contends that the operation was delayed, and was not provided while he was in County custody, in order to avoid the cost of the operation.  He further contends that "the defendants' actions" amounted to delib-erate indifference, and that he was allowed to "endure substantial physical pains when they allowed tuberculosis to eat throughout his spinal cord and paralyzed him from the waist down and confine him to a wheelchair in violation of the 8th Amendment..." (Amended Complaint, "Statement of Facts," DE#7 at pp. 10-16).

Plaintiff O'Neal, at Section III of the Complaint [captioned "Exhaustion of Administrative Remedies"], responded to questions that are part of the standard complaint form. (See DE#7, §III.B.). Answering "Yes" to the first three questions, he stated that his complaint concerns events that occurred within a county jail (§III.B.), acknowledged that the jail has a grievance procedure (§III.B.1), and indicated that he presented facts relating to his complaint through that grievance procedure (§III.B.2). In response to the remaining questions, he stated that the step he took was "Grievance of Medical Nature," (§III.B.3.a.) and that the results were "No response, Transferred to Prison" and "Grievance was not answered after plaintiff was transferred to prison" (§III.B.3.b.).

## II.  DISCUSSION

As discussed below, in Section "II.A." of this Report, the question of exhaustion is to be treated as a threshold issue, and therefore, resolution on the merits is appropriate only if final disposition of the complaint pursuant to §1997e(a) is not reached.

Based on the record, if the Court were to proceed to consideration of the merits, it is apparent, as discussed <u>infra</u> in Section "II.B" of this Report, that with regard to the complaint against the defendant Nurse Brown, there is no genuine issue as to material fact, and that Brown would be entitled to judgment in his favor.

## A.   <u>EXHAUSTION</u>

Turning to defendant Brown's lack of exhaustion argument, the Affidavit of Lt. Karen Jordan (designated as Defendant's Ex.5 at DE# 51-7; but actually filed at DE# 53-2) references/incorporates Defendant's Exhibit 4 (DE# 51-6). Exhibit 4 (filed at DE# 51-6 pp. 32-39) is a copy of the Metro Dade Department of Corrections and Rehabilitation ("MDDCR") grievance procedure [Volume No. 15, D.S.O.P. NO. 15-001, (Inmate Grievance Procedure), effective January 15, 1997]. In her Affidavit, Lt. Jordan states that she is familiar with the grievance procedure used at Miami-Dade County prisons and jails; that under D.S.O.P. 15-001 inmates must initiate a grievance within 3 working days of the event, and that this includes grievances about provision of medical care, or lack thereof. Jordan also states that grievances not submitted within the 3 day time limit are considered abandoned. She further states that, "[i]n addition to the D.S.O.P., inmates are informed of the three (3) day period for filing grievances in the Inmate Handbook provided to all inmates upon entry into Miami-Dade County facilities." In her Affidavit, Jordan stated that as her Exhibit "B" she was submitting a copy of the Handbook. No copy of the Handbook was filed with Jordan's Affidavit at DE# 53-2; however, excerpts from the Handbook [the cover page, and pp. I, iii, 2, 3, 14, and 15] do appear in the record, behind the D.S.O.P. (<u>See</u> Ex.4, DE# 51-6 at pp.40-44).

As provided in D.S.O.P. 15-001, the MDDCR administrative procedure provides for a multi-level review of inmate grievances, with four levels of action, each with a specific time limit allotted for officials to respond. The first action, which occurs at the inmate's institution, to be initiated by the inmate within 3 working days of the incident, is the *Informal Review/Grievance Screening* (FIRST LEVEL/Time Limitation for Officials' Response: 5 Working

Days). The second action, which constitutes an appeal from the Informal Grievance, and also occurs at the inmate's institution, is the *Grievance Hearing Committee* (SECOND LEVEL/Time Limitation for Officials' Response: 6 Working Days). The last two levels are appeals to Departmental Staff not located at the plaintiff's institution. These are: the appeal for *Support Services Division Director Review* (THIRD LEVEL/Time Limitation for Official's Response: 5 Working Days); and a final appeal to the *Department Director* (FOURTH LEVEL/Time Limitation for Response: 7 Working Days).

The D.S.O.P. NO. 15-001, in addition to setting specific time limitations for officials' responses, provides in pertinent part that "[i]f a time limit is exceeded, the grievant has a right to bump the grievance to the next level of appeal" (D.S.O.P. NO. 15-001, §V.A.6.). If the informal resolution at Level One is not accepted, the inmate/grievant is to initiate the appeal to Level Two within 48 hours (Id., §V.C.). If the inmate does not accept the recommendation at LEVEL TWO, or the issue cannot be resolved (a split vote by the 4 person committee), the inmate is to initiate an appeal to LEVEL Three within 48 hours (Id., §V.D.). Then if the Support Services Director's recommendation at LEVEL THREE is not accepted, the inmate is to initiate an appeal to Level Four within 48 hours (Id., §V.E.). If a deadline cannot be met, the D.S.O.P. provides for extensions of time, by stating that: "On a case by case basis, the time limit at each level of the grievance procedure may be extended and the inmate informed." (Id., §V.A.6.).

The PLRA, as enacted on April 26, 1996, significantly altered a prisoner's right to bring civil actions *in forma pauperis*. Among other things, it placed new restrictions on a prisoner's ability to seek federal redress concerning prison conditions (conditions of confinement). Subsection (a) of 42 U.S.C. §1997e reads, as follows:

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any

jail, prison, or other correctional facility until
such administrative remedies as are available are
exhausted.

The Courts have held that satisfaction of the PLRA exhaustion
requirement serves as a threshold issue, since the statutory man-
date requires an inmate/prisoner to have fully exhausted the admin-
istrative remedies/processes which are available to him or her,
before bringing suit on a claim in federal court, regardless of the
form of relief that the administrative process makes available. See
Booth v. Churner, 532 U.S. 731, 736-41 (2001); Higginbottom v.
Carter, 223 F.3d 1259 (11th Cir. 2000); Miller v. Tanner, 196 F.3d
1190, 1193 (11 Cir. 1999); Harris v. Garner, 190 F.3d 1279, 1286
(11 Cir. 1999); Harper v. Jenkin, 179 F.3d 1311, 1312 (11 Cir.
1999); Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11 Cir. 1998).

The Eleventh Circuit has held that "the judicially recognized
futility and inadequacy exceptions do not survive the new mandatory
exhaustion requirement of the PLRA," Alexander v. Hawk, supra, 159
F.3d at 1325-26; Harris v. Garner, 190 F.3d 1279, 1286 (11 Cir.
1999). Where exhaustion is now a precondition to suit "the courts
cannot simply waive those requirements where they determine that
they are futile or inadequate," since "such an interpretation would
impose an enormous loophole in the PLRA which Congress clearly did
not intend," and because "[m]andatory exhaustion is not satisfied
by a judicial conclusion that the requirement need not apply,"
Alexander, supra, at 1326 [citing, Weinberger v. Salfi, 422 U.S.
749, 766 (1975)(holding that where exhaustion is a statutorily spe-
cified jurisdictional prerequisite, "the requirement...may not be
dispensed with merely by a judicial conclusion of futility")]. Cf.
Qawi v. Stegall, et al., 211 F.3d 1270 [table case, published on
Westlaw], No. 98-1402, 2000 WL 571919, at *1-2 (6 Cir. (Mich) May
3, 2000)(affirming dismissal of the complaint for lack of exhaus-
tion, and noting that it was appropriate even though by time of the
appeal the plaintiff's administrative remedies might have become
time-barred) (citing Hartsfield v. Vidor, 199 F.3d 305, 309 (6 Cir.
1999); and Wright v. Morris, 111 F.3d 414, 417, n.3 (6 Cir. 1997)).

The term "available," as used in Section 1997e(a), does not

7

mean that prison inmates must only exhaust their administrative remedies if the relief they seek is "available" within the administrative apparatus; instead, the term means that a prisoner must exhaust all administrative remedies that are available before filing suit, regardless of their adequacy. Alexander v. Hawk, supra at 1325-26; Harris v. Garner, supra at 1286. This means that an inmate who is seeking money damages as relief from defendants in a lawsuit must exhaust all of his administrative remedies before filing suit, even if money damages are not available as relief through the jail/prison grievance procedure. Booth v. Churner, supra, 532 U.S. at 741, n.6; Alexander, supra.

The Courts have held that with enactment of the PLRA, 42 U.S.C. §1997e(a), as amended, requires that a prisoner must have taken the appropriate procedural steps and must have exhausted the available administrative processes before bringing suit in federal court steps to exhaust his administrative remedies. Booth v. Churner, 532 U.S. 731, 736-41 (2001) (holding that "one 'exhausts' processes, not forms of relief, and the statute provides that one must"; and further holding that "we think that Congress had mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures"); Miller v. Tanner, 196 F.3d 1190, 1193 (11 Cir. 1999) (incarcerated state prisoner must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983); Harper v. Jenkin, 179 F.3d 1311, 1312 (11 Cir. 1999) (rejecting plaintiff's argument that his administrative remedies should be deemed exhausted since his grievance was denied as untimely and any appeal therefrom would necessarily be denied; and affirming dismissal of civil rights suit for failure to satisfy mandatory exhaustion requirements, and in doing so holding that the appellant could not be considered to have exhausted his administrative remedies where he had not sought leave to file an out-of-time grievance, since to find otherwise would allow an appellant to simply ignore the PLRA's exhaustion requirement and still gain access to federal court merely by filing an untimely grievance).

Thus, the law is clear in this Circuit that inmates/prisoners must have sought to file out-of-time grievances and/or grievance appeals in order to exhaust their administrative remedies, as required under the PLRA. A prisoner who has not sought leave to file an out-of-time grievance cannot be considered to have exhausted his administrative remedies under §1997e(a), see Harper v. Jenkin, supra, 179 F.3d at 1312; and even if an appeal would have been futile, the requirement that it be filed is not waived. See Alexander v. Hawk, supra 159 F.3d at 1325-26.

The current exhaustion requirement under §1997e(a) was designed to reduce the quantity and improve the quality of prisoner suits, and affords corrections officials an opportunity to address complaints internally before allowing the initiation of a federal case; and in some instances, corrective action taken in response to a grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. Porter v. Nussle, 534 U.S. 516, 516-17 (2002). In other instances, the internal review might filter out some frivolous claims; and for cases ultimately brought to court, an administrative record clarifying the controversy's contours could facilitate adjudication. Id. at 517.

Courts from other Circuits have recognized an exception to the exhaustion requirement, reasoning that officers' acts/omissions interfering with or preventing the inmate from availing himself of the established administrative processes [including not responding to a grievance], may make the administrative remedy "unavailable."[2] Dicta in a 2005 slip opinion by the Eleventh Circuit suggests that if failure to respond had prevented an inmate from utilizing an institution's grievance system, this would be a factor for the

---

[2]      See Foulk v. Charrier, 262 F.3d 687, 697-98 (8th Cir. 2001)(holding that the district court lacked sufficient factual basis to find that an inmate had failed to exhaust his administrative remedies, when prison officials had refused to respond to his informal resolution request that he submitted as the first step of a 3 part grievance procedure); Miller v. Norris, 247 F.3d 736, 740 (8 Cir. 2001) (holding that inmate was prevented from exhausting his administrative remedies when prison officials failed to respond to his requests for grievance forms, and that the inmate's failure to exhaust those remedies was not a bar to suit because they were not "available" to him).

Court to consider, when determining exhaustion, or lack thereof.[3]
An inmate, however, cannot simply ignore an administrative
procedure. See Lyon v. Del Vande Krol, et al., 305 F.3d 806, 809 (8
Cir. 2002) (holding that there is a simple question: "was there a
procedure available?;" and finding the facts of the case indicated
that the plaintiff [Lyon] was aware that a grievance procedure
existed, but chose not to follow the steps that the procedure
outlined). Cf Harper v. Jenkin, supra, 179 F.3d at 1312 (failure
to file for out of time appeal, rendered processes unexhausted).

Additionally, in at least one district, the Southern District
of New York, where the administrative process allows an appeal to
a next level if a response at the current level is not received by
the inmate [similar to the MDDCR regulation allowing Miami-Dade
County inmates to "Bump" up to the next level, if a response is not
timely received] the Courts have held that the inmate needed to
appeal in the absence of a response, in order to exhaust the
administrative remedies on the claim that was not responded to.[4]

_____

[3]    See Pri-Har v. Corrections Corp. of America, Inc., No. 05-11132,
2005 WL 3087891, at *2 (11 Cir. Nov. 18, 2005) (Slip Opinion) (in reaching its
holding that "Pri-Har failed to exhaust his available administrative remedies
as required by the PLRA before filing this lawsuit," where the record showed
that he had ultimately exhausted a five level remedy process, but had
prematurely filed his complaint in federal court while grievance responses
were still pending at level three, the Court noted that "in this case there is
no evidence of failure to respond that prevented Pri-Har from utilizing CCA's
grievance system").

[4]    See Rivera v. Pataki, No. 01 Civ.5179 MBM, 2003 WL 21511939, at
*8, n.12 (S.D.N.Y. July 1, 2003) (When considering whether administrative
remedies were exhausted with regard to certain claims, but not others, the
Court observed, where a three level process existed [commencing with an Inmate
Grievance Resolution Committee, to be followed by an appeal to a
Superintendent], that "even if prison officials did not respond as they should
Rivera may still have had an appeal to the Central Office Review Committee,
and there was no evidence that Rivera had appealed any complaints to the
Central Office); Petty v. Goord, No. 00 Civ.803 (MBM), 2002 WL 31458240, at *4
(S.D.N.Y. Nov. 4, 2002) (noting that administrative procedure "specifically
allows an inmate to file an appeal when the grievance committee does not
respond to a complaint 'in a timely manner,'" and holding that where inmate
Petty had not gone beyond the initial grievance filed, but contended that he
did not do so because he had never received a response from the grievance
committee, his administrative remedies were not exhausted because the
administrative regulation provided that where the committee does not respond
to a complaint in a timely manner, the inmate's next step is to take an appeal
to the institutional Superintendent). But see Powe v. Ennis, 177 F.3d 393, 394

In this case, relying on his Exhibits 4 and 5 [the D.S.O.P. 15-001, and Handbook excerpts; and Officer Jordan's Affidavit], defendant Brown argues in his motion for summary judgment that plaintiff O'Neal was required to fully exhaust his available administrative remedies, and that the Inmate Handbook puts inmates on notice that from the date of the incident or event being complained of there is a 3-day time limit in which to file the initial grievance for informal resolution. Defendant Brown further argues that plaintiff O'Neal either "did not file, or at the very least complete, any grievance procedure prior to his transfer to a State facility." (DE# 51, p.7).

The Eleventh Circuit has held that an inmate's transfer does not remove the requirement that he/she pursue and exhaust administrative remedies concerning events which occurred at the institution prior to the inmate/prisoner's transfer, where there was opportunity for the inmate to have used the grievance procedure prior to his removal from the institution where the alleged deprivation occurred. See Hall v. Richardson, 144 Fed.Appx. 835, 836, n.2 (11 Cir. 2005) (in case where plaintiff argued on appeal that he could not exhaust his administrative remedies because he was transferred from the institution where the alleged violations occurred, that he could no longer pursue exhausting his remedies through the administrative process, and that the transfer should be deemed to have removed the exhaustion requirements, the Appellate Court, upon affirming the district Court's dismissal pursuant to §1997e(a), rejected plaintiff's arguments, and in doing so noted that incidents he complained of had occurred in December 2000 and December 2001, but he was not transferred until February 28, 2002, and therefore he had not exhausted his administrative remedies when he had the opportunity to do so).

---

(5th Cir.1999) (per curiam) (applying Texas law) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired."); John v. N.Y.C. Dep't of Corrs., 183 F.Supp.2d 619, 625 (S.D.N.Y.2002) (finding that the plaintiff was deemed to have exhausted his administrative remedies under applicable codes and regulations, where he filed a grievance and received no response from the grievance review committee, because he had apprised the Commissioner of the situation, even though there was no decision to appeal).

In this case, the defendant Brown is correct in arguing that the record does not indicate, and O'Neal does not allege, that he filed or attempted to file any appeal from any unanswered request for administrative remedy which he states he submitted at the DCJ, on an unspecified date.

It is true, based on the provisions of the MDDCR regulation D.S.O.P. 15-001, that in order to satisfy the PLRA exhaustion requirement, an MDDCR inmate such as O'Neal may not simply have stopped his attempts to exhaust at LEVEL ONE if officials at the DCJ ignored and/or did not respond to an initial/informal grievance. Under such a circumstance, when the five working days allotted to respond had passed, O'Neal was entitled to "bump" the grievance procedure to LEVEL TWO within 48 hours. Thereafter, if he received no response from the Review Committee within the allotted 6 working days, then within 48 hours he could "bump" the grievance process upward, for a decision *outside* of the institution to an individual at LEVEL THREE (the Support Services Division Director), and thereafter, if dissatisfied with the Support Services Director's recommendation, he could appeal at LEVEL FOUR to the Director of the County's Corrections Department. Clearly, where the D.S.O.P. provided that if administrative action at one level was not timely, O'Neal could "bump" the process to the next level, he cannot be deemed to have fully exhausted the administrative process without having done so.

In his amended complaint Plaintiff O'Neal has alleged that prior to the taking of x-rays at JMH on June 15, 2004, or the day after, he had complained of discomfort to nurses, and was seen by doctors for back and neck pain. It appears, however, that the gravamen of his complaint against the defendant Nurse Brown is that it became clear from the Mid-June x-rays that spinal surgery to place a rod in his back was required, and that it was not provided. This means that, at least, O'Neal had 48 calendar days, from June 16 until August 4, 2004, in which to commence and complete the 4-level MDDCR grievance process; and since he contends that x-rays that put MDDCR medical staff on notice of the need for surgery were

taken on June 16, 2004 (a Wednesday), it appears that O'Neal had three working days (until Monday, June 21) in which to initiate his LEVEL ONE informal grievance about such a claim, and that if it was not timely filed, it would be considered procedurally defaulted or "abandoned." If a grievance was timely filed on/before Monday June 21, 2004, the staff would then have 5 working days to respond [presumably until Monday, June 28]. Then, if O'Neal received no response by Monday, June 28, it would appear under the regulation that he had 48 hours, until Wednesday, June 30, to appeal/"Bump" his grievance to the next level [the institutional Grievance Committee]. If this occurred, the committee would then have 6 working days, until Thursday, July 8, to respond. O'Neal, if dissatisfied, would have 48 hours, until Monday, July 12, to appeal to the Support Services Director. He/She would then have 6 working days, until Tuesday, July 20, to respond. O'Neal, if again dissatisfied, would have 48 hours, until Thursday, July 22, to advance his grievance to the Department Director, and he/she would have six working days, until Friday, July 30, 2004 to rule. In sum, it appears that after the June 16, 2004 x-rays, which O'Neal claims put MDDCR medical staff on notice of his need for surgery, there was ample time for him to begin and complete the 4-level MDDCR grievance process before his August 4, 2004 transfer to the Florida DOC.

In his Response (DE# 58), which is sworn (see DE# 58 at p.18), O'Neal states that he "utilized the grievance procedure," and that he did not receive an answer. That sworn statement is deemed sufficient for purposes of this summary judgment proceeding to show that he did initiate some informal grievance at LEVEL ONE which was ignored. A problem exists, however. This is that O'Neal, as the plaintiff, neither states on what date he "utilized the grievance procedure," nor specifies what precise claim was raised in the grievance which he contends that he filed. Neither with his complaint, nor his summary judgment response, has he submitted a copy of any MDDCR grievance document.

The problem created by plaintiff O'Neal's imprecise statement of facts is exacerbated by the failure of the defendant Brown,

13

through Lt. Jordan's Affidavit (Ex.5), through his own Affidavit
(Affidavit of Arthur Lee Brown, Ex.3, DE# 51-6 at pp.29-31), or
otherwise, to submit documentation based on MDDCR records to
establish either: (1) on what date(s) O'Neal filed any grievance(s)
regarding the matters asserted against Nurse Brown in this lawsuit,
(2) that such a grievance or grievances, if filed, was/were timely
or untimely; or (3) that O'Neal filed no such grievance(s).

Assuming *arguendo* that O'Neal filed a grievance, but received
no response, it cannot be determined whether it was simply ignored
as O'Neal indicates, or went unanswered because it was untimely.

Even this would not ordinarily prevent summary disposition of
the complaint for lack of exhaustion if the inmate/plaintiff O'Neal
was made aware of the "Bump Up" requirement that is explicitly set
out in D.S.O.P. 15-001. But assuming, as the Court must, that the
non-movant O'Neal did file an informal grievance, the aforemention-
ed evidentiary problems are compounded by the fact that defen-
dant/movant Brown's exhibits at summary judgment do not definitive-
ly establish that inmate/plaintiff O'Neal was put on proper notice
that if his LEVEL ONE informal grievance went unanswered, he was
required to "Bump Up" his grievance to LEVEL TWO [and then proceed
to LEVEL THREE and LEVEL FOUR].   There is no evidence to establish
that inmate O'Neal was made aware of the detailed D.S.O.P. 15-001
insofar as it incorporates the "Bump Up" provision that is
triggered by staff's failure to timely respond. The text of the
Inmate Handbook incorporates only a highly abbreviated description
of the Grievance Procedure's requirements.[5]  It does not mention

---

[5]      Under the heading "XVI Grievances," the MDDCR Inmate Handbook reads,
at page 14, as follows:

**XVI.  Grievances**
     The Miami-Dade Corrections and Rehabilitation Department's
formalized inmate grievance procedure is designed to resolve inmate
complaints in a fair, timely and uniformed manner. The grievance
procedure is available and applicable to all inmates incarcerated in
the Miami-Dade Corrections and Rehabilitation Department, regardless
of their status.  No harassment, punishment or disciplinary action
will result to an inmate who seeks resolution of legitimate
complaints made in good faith.

that there are 4 Levels required to exhaust the MDDCR grievance process. It states that the first [informal] grievance must be filed within 3 days of "the occurrence," and indicates that if the "informal resolution" is "not accepted" the "grievant must sign the request for further within 48 hours after notification." The Handbook, however, does not instruct the inmate how many days are allotted for staff to consider the informal grievance [5 days], or make clear that he/she must appeal ("Bump Up") to LEVEL TWO within 48 hours of the staff-response-deadline in order to preserve viability of the administrative grievance process. Nor does the Handbook notify the inmate, at the outset, that if an informal grievance is not timely initiated within 3 days of the occurrence or event that is the subject of the grievance, the grievance is considered to be procedurally defaulted [or "abandoned" as stated in Lt. Jordan's Affidavit].

It is clear from the record, based upon inmate/plaintiff O'Neal's own admission, that he did not fully exhaust the MDDCR

---

**A. Grievance Procedures**

A grievance is a complaint about the substance or application of any written or unwritten policy, regulation or rule of the Department or any of its program units; the lack of a policy, regulation or rule or a complaint about any behavior or action directed towards an inmate. A grievance is composed of a statement of the grievance (complaint) and the remedy requested.

You may initiate a grievance by notifying any staff member, either verbally or in writing, of your intent to file a grievance. Then, complete an Inmate Grievance Form. Grievance forms are available in your cell/floor/housing unit.

If the grievance is related to a specific incident or event, the Inmate Grievance Form must be submitted within three (3) working days of the occurrence in order for the grievance to be filed.

You will receive a decision on your grievance and will be notified either in writing or by personal interview of the decision. All grievances will be resolved to the agreement of all concerned. If the informal resolution is not accepted, the grievant must sign the request for further appeal within 48 hours after notification.

The Rehabilitative Services Bureau staff maintains a record of your grievance. If you are released prior to the grievance being resolved, the committee will determine whether the grievance should be continued on your behalf or terminated.

(See Defendant's Ex.4, at DE# 51-6 p.44).

administrative grievance processes.

Due to lack of evidence regarding the date on which O'Neal filed a grievance and regarding its content, and more importantly, lack of evidence to establish that inmate O'Neal was apprised of the time constraints incorporated in the MDDCR Grievance Procedure, it appears [based on the record that is presently before the Court] that the defendant Brown's motion for summary judgment should be denied, insofar as it relies upon §1997e(a).

If, however, upon filing objections to this Report, defendant Brown is able to definitively establish: (1) that plaintiff O'Neal actually received an Inmate Handbook, and therefore was on notice of the 3-day grievance filing deadline, but failed to timely initiate a grievance incorporating the same claim(s) which he raises in this §1983 suit against Nurse Brown, or (2) that O'Neal received a copy of, or was aware of the detailed contents of D.S.O.P. 15-001, and timely initiated a grievance at LEVEL ONE, but received no response and yet failed to appeal/"Bump" his grievance to LEVEL TWO, then in light of the Congressional mandate that pre-suit administrative exhaustion is required, the defendant's motion should be granted based on O'Neal's failure to satisfy requirements of 42 U.S.C. §1997e(a).

### B.  The Merits

As discussed further, below, the evidence of record, including the affidavit of Arthur Lee Brown (Defendant's Ex.3, DE#51-6), and plaintiff O'Neal's MDDCR (Corrections Health Services) medical records (filed as Defendant's Ex.2, at DE#s 51-2, 51-3, 51-4, and pages 1-26 of DE#51-6), and plaintiff O'Neal's Response (DE#58), establishes that the defendant Nurse Brown was not deliberately indifferent to the plaintiff's serious medical needs.

### The Law Concerning Medical Claims In the Prison Context

Title 42 U.S.C., Section 1983, requires an affirmative causal connection between an official's acts and an alleged constitutional deprivation. Harris v. Ostrout, 65 F.3d 912, 917 (11 Cir. 1995); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11 Cir. 1995).

Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eight Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Whether an inmate's medical need requires attention as a matter of constitutional right depends upon its severity. See Estelle, supra, at 104-06. Generally, a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11 Cir. 2003) (quoting Hill v. Dekalb Req'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11 Cir. 1994)).

The standard may be met where there is a showing that jail officials denied or delayed an inmate from receiving necessary medical treatment for non-medical reasons, see Ancata v. Prison Health Services, Inc., 769 F.2d 700, 704 (11 Cir. 1985). In addition, officials' inordinate delay in providing necessary treatment, without medical explanation, may evidence deliberate indifference, Farrow v. West, 320 F.3d 1235, 1247 (11 Cir. 2003), and the standard may be met where there is intentional, unexplained delay in providing to access treatment for serious painful injuries, Brown v. Hughes, 894 F.2d 1533 (11 Cir. 1990), and cases cited therein.

In Estelle, the Supreme Court reasoned that "an inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Id., 429 U.S. at 103. Not every claim by a prisoner, asserting that he has not received adequate medical treatment, however, is sufficient to state a violation of the Eighth Amendment. McElligot v. Foley, 182 F.3d 1248, 1254 (11 Cir.1999). Negligence is not enough,[6] and a mere difference of opinion between an inmate and prison medical staff concerning his diagnosis and course of treatment does not

---

[6]    It is well settled that a showing of mere negligence, neglect, or medical malpractice is insufficient to recover on a §1983 claim. A showing of conscious or callous indifference is required. Estelle, supra, 429 U.S. at 104-06; Daniels v. Williams, 474 U.S. 327 (1986); Brown v. Hughes, 894 F.2d 1533, 1537-38 (11 Cir. 1990); Washington v. Dugger, 860 F.2d 1018, 1021 (11 Cir. 1988).

rise to the level of a constitutional deprivation.[7] Thus, it is well settled that a showing of mere negligence, neglect, or medical malpractice is insufficient to recover on a §1983 claim. Estelle, supra; Adams v. Poag, 61 F.3d 1538 (11 Cir. 1995). In fact, once an inmate has received medical care, courts are hesitant to find that a constitutional violation has occurred. Hamm v. DeKalb County, 774 F.2d 1567, (11 Cir.), cert. denied, 475 U.S. 1096 (1986).

Treatment violates the Eighth Amendment only if it involves "something more than a medical judgment call, an accident, or an inadvertent failure," Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5 Cir. 1980). It must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Harris v. Thigpen, 941 F.2d 1495, 1505 (11 Cir. 1991). In order to show an objectively serious deprivation of medical care, the inmate must demonstrate: 1) an objectively serious medical need that, left unattended, poses a serious risk of harm; 2) that the response made by public officials to that need was poor enough to constitute an "unnecessary and wanton infliction of pain," and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law; and 3) an attitude of deliberate indifference, which shows that the defendants were aware of the facts from which a substantial risk of serious harm could be inferred, *and that they*

---

[7]     The Courts have long recognized that a difference of opinion between an inmate and the prison medical staff regarding medical matters, including the diagnosis or treatment which the inmate receives, cannot in itself rise to the level of a cause of action for cruel and unusual punishment, and have consistently held that the propriety of a certain course of medical treatment is not a proper subject for review in a civil rights action. Estelle v. Gamble, supra, at 107 ("matter[s] of medical judgment" do not give rise to a §1983 claim). See: Ledoux v. Davies, 961 F.2d 1536 (10 Cir. 1992) (inmate's claim he was denied medication was contradicted by his own statement, and inmate's belief that he needed additional medication other than that prescribed by treating physician was insufficient to establish constitutional violation); Ramos v. Lamm, 639 F.2d 559, 575 (10 Cir. 1980) (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation), cert. denied, 450 U.S. 1041 (1981); Smart v. Villar, 547 F.2d 112, 114 (10 Cir. 1976) (same); Burns v. Head Jailor of LaSalle County Jail, 576 F.Supp. 618, 620 (N.D. Ill., E.D. 1984) (exercise of prison doctor's professional judgment to discontinue prescription for certain drugs not actionable under §1983).

18

*actually did draw that inference*. <u>Taylor v. Adams</u>, 221 F.3d 1254, 1258 (11 Cir. 2002). The deliberate indifference requirement is discussed further, below.

In this case, it appears that the plaintiff O'Neal was a pretrial detainee for a portion of the time that he was confined in the MDDCR, and that for a portion of the period he stood as a convicted prisoner.[8] Of course, where an inmate was a pretrial detainee, then his claim which otherwise would have been cognizable as a claim arising under the Eighth Amendment had he been a convicted prisoner, would instead be subject to analysis under the Due Process Clause of the Fourteenth Amendment. Regardless of whether he was a pretrial detainee, or a convicted prisoner, however, the standard is the same. See <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979); <u>Hamm v. DeKalb County</u>, 774 F.2d 1567 (11 Cir. 1985)(for analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment); <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1490 (11 Cir. 1996)("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.... However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees.")

<u>The Eighth Amendment</u>

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993)); <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1362 (11 Cir. 1999); <u>see also</u> <u>Whitley v.</u>

---

[8]    Records pertaining to O'Neal which are maintained and published by the Florida DOC as a matter of public record on the *Corrections Offender Network,* under *Inmate Population Information Detail,* at the DOC's Internet website (http://www.dc.state.fl.us)  make clear that sentences were imposed in O'Neal's state criminal case [Miami-Dade Case No. 01-19774] on 6/17/03 and 7/21/04.

Albers, 475 U.S. 312, 327 (1986) (holding that "the Due Process Clause affords ... no greater protection").

In LaMarca v. Turner, 995 F.2d 1526, 1535 (11 Cir. 1993) the Court held that to prevail on an Eighth Amendment claim for damages in a civil rights suit, a plaintiff must prove three elements: 1) an objective element, a condition that inflicted unnecessary pain or suffering, Id., citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981); 2) a subjective element, deliberate indifference on the part of the defendant(s) to that condition, Id., citing Wilson v. Seiter, 501 U.S. 594 (1991); and 3) causation, Id., citing Williams v. Bennett, 689 F.2d 1370, 1389-90 (11 Cir. 1982). Both the objective and subjective elements must be satisfied. LaMarca, supra, 995 F.2d at 1535, n. 17 (citing Hudson v. McMillian, ___ U.S. ___, 112 S.Ct. 995, 999-1000 (1992)).

Although the Constitution does not require comfortable prisons, it does not permit inhumane ones. Farmer, supra, 511 U.S. at 832 (quoting Rhodes, supra, 452 U.S. at 349). Still, the Eighth Amendment does not authorize judicial reconsideration of "every governmental action affecting the interests or well-being of a prisoner," Whitley, 475 U.S. at 319; instead, "'[a]fter incarceration, only the "'unnecessary and wanton infliction of pain'"... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" Id. at 319 (quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976) (citations omitted))). Crucial to establishing an "unnecessary and wanton infliction of pain" is some proof that officials acted with specific intent. The exact nature of the specific intent required depends on the type of claim at issue. Campbell v. Sikes, supra, 169 F.3d at 1363. This specific-intent requirement for an Eighth Amendment violation applies to claims of medical indifference. Campbell v. Sikes, supra, 169 F.3d at 1363-64.

As the Eleventh Circuit in Campbell v. Sikes observed, the Supreme Court in Wilson v. Seiter, and later Farmer v. Brennan, has "refined the inquiry" regarding satisfaction of the subjective ele-

20

ment required for an Eighth Amendment deprivation. Campbell, supra,
169 F.3d at 1363. The Supreme Court explained in Wilson v. Seiter,
that the Eighth Amendment applies only to punishments, and that
prison conditions are only punishment if a mental element of puni-
tive intent is shown, Wilson, supra, 501 U.S. at 300 ("If the pain
inflicted is not formally meted out as punishment by the statute or
the sentencing judge, some mental element must be attributed to the
inflicting officer before it can qualify"). In Farmer v. Brennan,
the Court provided further explanation of the mental state that is
required for deliberate indifference, Farmer, supra, 511 U.S. at
837-38 (holding that a prison official cannot be found liable under
the 8th Amendment for denying an inmate humane conditions unless he
knows of and disregards an excessive risk to inmate health or
safety; and he must be both aware of facts from which the inference
could be drawn that a substantial risk of serious harm exists, and
the defendant must also draw the inference).

     As the Eleventh Circuit has noted post-Farmer, proof that the
defendant should have perceived the risk, but did not, is
insufficient. Campbell supra, at 1364 (citing Farmer, at 838);
Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11 Cir. 1996) (the
official must have a subjectively "'sufficiently culpable state of
mind,'" and "[t]here is no liability for 'an official's failure to
alleviate a significant risk that he should have perceived but did
not...'") (quoting Farmer, supra, 511 U.S. at 834, 838). Liability
may be imposed for deliberate indifference only if the plaintiff
proves the defendant actually knew of "an excessive risk to inmate
health or safety" and disregarded that risk." Campbell, supra, at
1364 (citing Farmer, at 837).

     In his pleading the plaintiff O'Neal alleges that his un-
answered grievance put MDDCR medical staff on notice of his serious
medical needs. (DE# 7). O'Neal reasons that the defendant Nurse
Arthur Brown therefore knew or should have known that he required
care, including but not limited to back surgery as evidenced by x-
rays taken at Jackson Memorial Hospital on or about June 16, 2004.
He claims that as a cost-saving measure surgery was not provided

before his August 4, 2004 transfer from the DCJ to the Florida DOC. (<u>Id</u>.). In his Response opposing defendant Brown's Motion for Summary Judgment, plaintiff O'Neal states, without supporting evidence, that Brown's signature appeared on denied grievances filed by other inmates (DE#58, p.9), and he reasons, therefore, that the grievance procedure "Directly involved the Director of Patient Services" [i.e, defendant Brown]. (<u>Id.</u>). O'Brien further offers, as Exhibit "A" to his Response, a hand-written General Affidavit from Jack Jean who states that he was a DCJ inmate from February 2002 until October 2004, that during his incarceration he neither received or saw an inmate Handbook for the DCJ, that he had filed grievances that went unanswered, and that "I also witnessed Corey O'Neal file a grievance on the medical department in which nothing was done about his situation." Jean's Affidavit is undated and unsigned, and therefore is inadmissible as evidence in this case. Moreover, even if he had signed it, Jean's affidavit does not state when, against whom, or about what the grievance by O'Neal was filed. [O'Neal's filings are silent with regard to whether he ever received a copy of the Handbook].

While Nurse Brown's Affidavit states that as Director of Patient Care (a/k/a Director of Nursing) his responsibilities included the coordination of nursing services and implementation of standards of nursing in all MDDCR detention facilities, his training and licensing was as a registered nurse, and not as a medical doctor. Furthermore, Brown's Affidavit establishes, and it is not refuted in the record by competent evidence, that at no time did he ever participate in the medical care of inmate/plaintiff O'Neal, and as such, he did not participate in any alleged deprivation and/or denial of O'Neal's medical care. Brown states in his Affidavit that he was not aware that any such alleged deprivation and/or denial occurred. Defendant Brown further states that he was never provided with, nor did he review, any administrative grievance from, on behalf of, or regarding O'Neal, and this sworn statement is not rebutted by the plaintiff with evidence of the sort contemplated under Rule 56 as necessary to rebut an initial showing by a movant at summary judgment.

Defendant Brown also states in his sworn Affidavit that he never sought to delay or deprive inmate O'Neal or any other inamte medical treatment so as to defer costs of such treatment to other private or governmental entities including the State of Florida; and further clarifies that, in fact, he did not have the authority to defer the cost of a patient's medical treatment. Additionally, the defendant Brown states that he never met or to his knowledge came into contact with O'Neal at any time during his tenure as Director of Patient Care, nor did he provide any directions to any of his subordinates regarding O'Neal's medical treatment. And, finally, Brown states that at no time did he have the authority to make a determination or direct his subordinates not to send O'Neal to an outside hospital. (Affidavit, Ex.3, at DE#51-6 p.30). A review of the medical documents pertaining to O'Neal which are of record in this case fails to reveal signatures, name stamps, or other evidence showing that Nurse Arthur Lee Brown was involved in the examination, treatment, or care plan of inmate O'Neal during the period of time complained of by him in this case.

It is readily apparent, based on this undisputed showing of evidence by the defendant Brown, that there was no causal connection between him and the deprivations alleged. See Harris, supra, 65 F.3d at 917; As such, Brown cannot be said to have been deliberately indifferent to O'Neal's serious medical needs. Brown could be liable only if plaintiff O'Neal proved that he knew of facts from which it could be inferred that there was "an excessive risk" to O'Neal's "health or safety" and that having drawn the inference, he nonetheless "disregarded that risk." Campbell supra, at 1364; Cottrell, supra, at 1491. This, plaintiff O'Neal has not done. The defendant Brown is therefore entitled to summary disposition of the amended complaint, in his favor.

### III.   CONCLUSION

For the above stated reasons it is therefore recommended that: 1) the defendant Brown's Motion for Summary Judgment (DE# 51) be granted; and 2) this case be closed.

23

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated: September 29<u>th</u>, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Corey O'Neal, <u>Pro Se</u>
    DC# M42656
    Everglades Correctional Institution
    P. O. Box 949000
    Miami, FL 33194-9000

    Wilfredo A. Ferrer, Esquire
    Martin W. Sybblis, Esquire
    Assistant County Attorneys
    Miami-Dade County Attorney's Office
    Stephen P. Clark Center
    111 N.W. 1st Street, Suite 2810
    Miami, FL 33128